**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SHERI MOSLEY, individually
and on behalf of all others
similarly situated,

            Plaintiff,

v.                                    Case No. 3:19-cv-379-J-32JRK

LOZANO INSURANCE ADJUSTERS
INC., FRANK LOZANO, LISETTE
LOZANO, ANCHOR INSURANCE
HOLDINGS, INC., and KEVIN
PAWLOWSKI,

            Defendants.
_____/

## **REPORT AND RECOMMENDATION**[1]

### **I.   Status**

This cause is before the Court on the Joint Motion to Authorize Notice of Fair Labor Standards Act Settlement to Plaintiffs (Doc. No. 118; "Motion"), filed May 1, 2020.[2] Attached to the Motion are: 1) the Parties' Settlement Agreement (Doc. No. 118-1; "Settlement Agreement"); 2) the Parties' proposed Notice to be issued to all of the Plaintiffs describing the settlement and their options (Doc. No. 118-2; "Notice"); and 3) a proposed order on the Motion (Doc. No. 118-3).   In addition, two declarations were separately filed

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on this collective action settlement issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

[2] Citations to all filings follow the pagination assigned by the Court's electronic filing system (CM/ECF).

in support of the Motion: the Declaration of Michael J.D. Sweeney in Support of Motion (Doc. No. 119; "Sweeney Decl."), filed May 1, 2020; and the Declaration of Kevin Pawlowski (Doc. No. 120; "Pawlowski Decl."), filed May 1, 2020.

In the Motion, the parties notify the Court they have settled this case involving the Fair Labor Standards Act ("FLSA") and Florida law, and they seek entry of an Order permitting the parties to issue the Notice to each Plaintiff. See Motion at 1-2, 25. The Motion is referred to the undersigned.[3]

## II.   Background

On April 3, 2019, Plaintiff Sheri Mosley ("Plaintiff" or "Named Plaintiff") commenced this action individually and on behalf of all others similarly situated by filing a Complaint (Doc. No. 1; "Complaint") against Defendants Lozano Insurance Adjusters, Inc., Frank Lozano, Lisette Lozano, Anchor Insurance Holdings, Inc., and Citizens Property Insurance Corp. ("Original Defendants") for overtime wage violations under the FLSA, 29 U.S.C. §§ 201, et seq. (count I) and negligent misrepresentation under "Florida Common Law" (count II). See Complaint; see also Doc. Nos. 10, 11 (duplicate Complaints). Plaintiff alleged she was employed by Original Defendants "as an insurance claims handler in their Jacksonville, FL offices" and she, together with a number of other insurance claims handlers, "regularly worked far in excess of 40 hours in a week," time for which they were not paid overtime wages. Id. at 1. Shortly after the filing of the Complaint, on May 13, 2019, Plaintiff voluntarily dismissed Defendant Citizens Property Insurance Corp. See Notice (Doc. No. 22); Order (Doc. No. 26).

---

[3]   Because any forthcoming motion seeking final approval of a settlement will be addressed by the undersigned entering a Report and Recommendation to the assigned District Judge, see Order (Doc. No. 113), entered May 2, 2020, the undersigned deems it appropriate to handle the instant Motion by Report and Recommendation as well.

In accordance with the Court's FLSA Scheduling Order (Doc. No. 4), Plaintiff on May 15, 2019 filed Responses to Court's Interrogatories (Doc. No. 27) in which she claimed an estimated $79,212.86 in back wages and liquidated damages, and approximately $18,500 in payroll taxes she paid as a result of being misclassified as an independent contractor. Then, on June 4, 2019, the rest of the Original Defendants appeared in the action and responded to the Complaint (Doc. No. 34; "Answer"), denying they violated the FLSA or Florida common law, and asserting fifteen affirmative defenses. On June 14, 2019, in compliance with the Court's FLSA Scheduling Order, the remaining Original Defendants filed a Verified Summary (Doc. No. 37) of hours worked by Plaintiff during the time periods at issue.

The parties began settlement discussions in July 2019. See Motion at 7. On August 9, 2019, they filed a Joint Motion for Approval of Notice to the Class (Doc. No. 59), in which they asked "the Court to order notice to issue to the putative class in the form and process described" in their motion. On September 5, 2019, the Court entered an Order for Notice to the FLSA Class (Doc. No. 67) in which the parties' request for notice to the putative class was granted; persons were identified as "the FLSA Collective"; the parties were given directions on how to accomplish notice to the FLSA Collective; and the FLSA Collective members were provided 60 days from the issuance of the notice to join their claims to this action. Both prior to and after the court entered the September 5, 2019 Order, opt-in Plaintiffs began filing Notices of Consent to Join. In all, there are now ninety-two (92) opt-in Plaintiffs, in addition to the Named Plaintiff. See Sweeney Decl. ¶ 10.

The parties mediated on January 28, 2020 but did not resolve the claims at that time. See Motion at 8. On February 4, 2020, Plaintiff moved to amend the Complaint to add an additional Defendant: Kevin Pawlowski, the CEO of the corporate Defendants (Doc.

No. 100). The Court granted leave to amend on February 5, 2020 (Doc. No. 102), and the Amended Complaint (Doc. No. 104) was filed that same day. On February 28, 2020, the parties notified the Court that they had settled the case in principle (Doc. No. 112). Thereafter, the instant Motion was filed.

### III.   Settlement Agreement

"The Settlement is structured so that every Plaintiff, including the Named Plaintiff, has the right to opt out of the settlement and preserve their right to bring claims against [] Defendants." Motion at 11 (citing Sweeney Decl. ¶ 39); see also Settlement Agreement at ¶ I.A.3. Under the terms of the settlement agreement, the "Settling Parties" (the named Plaintiff on behalf of all other Plaintiffs, together with all current Defendants) "have agreed to a global settlement" of $600,000. Settlement Agreement at ¶ I.A.1.

The parties estimate that each Plaintiff will recover an average of approximately $4,200 ($6,450 minus one-third for attorneys' fees and service awards and costs). Motion at 13, n.4. The Named Plaintiff will receive a $5,000 service award (if she does not opt out); counsel will receive up to one-third of the total settlement amount for attorneys' fees; and costs will be deducted in the amount of approximately $3,837.25. Id. at 13, 16, 18, 18 n.7. Individual recoveries are based on Plaintiffs' "pay and the number of weeks worked." Id. at 13; see Sweeney Decl. at ¶ 62. "Plaintiffs' recovery is calculated based on their scheduled hours plus an average of five (5) additional hours worked outside the scheduled hours to determine the number of hours worked each week." Id. at 13; see Sweeney Decl. at ¶ 62. "After Plaintiffs calculated the total damages, Plaintiffs prorated their settlement recovery after making deductions for a service award, attorneys' fees at one-third, and costs." Id. at 13; see Sweeney Decl. at ¶ 63.

### IV.   Notice Issues

Before approving a FLSA settlement, particularly in a collective action, the Court may authorize notice of the settlement to the opt-ins.  This notice serves an important function because it protects the opt-in Plaintiffs' rights to object prior to being bound by the settlement terms.  In this case, it also allows the opt-in Plaintiffs to opt out of the settlement.   The parties cite a number of unpublished decisions supporting the request to issue notice to the opt-in Plaintiffs, see Motion at 14-15 (collecting cases), and the undersigned finds notice is appropriate here.  If the Court approves of the notice procedure, class counsel will mail the Notice after the instant Motion is ruled on; Plaintiffs will be provided thirty (30) days to opt-out or file objections; the settling Plaintiffs will move for final approval within thirty (30) days of the close of the period for opting-out or filing objections; if the Court approves the settlement, checks will be issued within thirty (30) days of final approval; and any required reallocation of uncashed funds (whether to the settling Plaintiffs who cashed their checks or, if impractical, to a cy pres recipient) would be done one hundred-twenty (120) days after the issuance of the initial checks.  See Motion at 12-13.

The form of the notice is another issue.   The parties intend to use a notice that is "derived from the Federal Judicial Center class action notice."   Motion at 15 (citing https://www.fjc.gov/sites/default/files/2016/ClaAct11.pdf).   The undersigned's review of the proposed Notice indicates it is concise, easy to understand, informs the opt-in Plaintiffs of the essential terms of the Settlement Agreement and their rights, and (to the extent applicable), it complies with the FJC's illustrative notice cited by the parties.[4]

---

[4]     There is a typographical error in the last line of paragraph 3: "recover" should be "recovery."

## V. Preliminary Approval of FLSA Settlement

Although the parties suggest in one place in their Motion that preliminary approval of the FLSA Settlement Agreement is unnecessary, see Motion at 18, in other places, they specifically ask for preliminary approval, see id. at 7, 25, Ex. 3 (proposed order preliminarily approving the Settlement Agreement). Further, the parties substantively argue for preliminary approval in the event the Court deems it necessary. See id. at 18-25.

In an FLSA case for "back wage[s] or liquidated damage[s]," the Court must make a finding that any compromise settlement of the case represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions" after "scrutinizing the settlement for fairness." Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dept. of Labor, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982); see also Nall v. Mal-Motels, Inc., 723 F.3d 1304, 1306 (11th Cir. 2013) (citation omitted); Silva v. Miller, 307 F. App'x 349, 351 (11th Cir. 2009).

Here, the parties represent that they have "many bona fide disputes ranging from whether Plaintiffs are due overtime wages at all, to whether Defendants' violations of the FLSA, if any, were willful." Motion at 19. Defendants have "maintained throughout the litigation that Plaintiffs were properly classified as independent contractors and thus were not covered by the FLSA overtime requirements," id. at 19-20, and Defendants did not violate Florida common law regarding negligent misrepresentation by misclassifying them, see Answer at 6-7. They also argued that, to the extent Plaintiffs were covered, they were exempt from overtime provisions. Motion at 20. They raised a statute of limitations defense. Id. And, they raised a good faith defense to paying liquidated damages. Id.

The parties recognize that further litigation would be complex, expensive, and risky. Id. at 21-22. Even if Plaintiffs prevail, the recovery of any monetary judgment by Plaintiffs could be particularly risky because of Defendants' current financial condition. See id.

The corporate Defendants currently have more than $28 million in debt and the financial picture (although uncertain) appears bleak.  Id. at 8, 21-22; see Pawlowski Decl.  A large judgment from this case could very well "drive [] Defendants into insolvency."  Id. at 22.  "This settlement allows each Plaintiff to make his or her own decision as to whether to avoid the risk and recover now or to continue the litigation and seek a higher recovery at the risk of not recovering at all."  Id.

In light of the foregoing, it appears there are legitimate reasons for the compromise, and the proposed settlement is fair and reasonable.  See Lynn's Food Stores, 679 F.2d at 1355.  As to the attorneys' fees and costs, each opt-in Plaintiff was notified as part of the opt-in form that "fees retained by the attorneys will be either the amount received from the defendant or 1/3 of my gross settlement or judgment amount, whichever is greater."  Accordingly, it appears each opt-in Plaintiff knows of the possibility of this amount being awarded.  The estimated costs at this point are $3,837.25, an insubstantial amount compared to the ultimate settlement.  In any event, because the parties have agreed that "the failure of the Court to award Class Counsel the full amount of attorneys' fees and costs requested by Class Counsel in their [forthcoming] Motion for Award of Attorneys' Fees and Costs will not be a reason to nullify the [Settlement] Agreement," Settlement Agreement at ¶ VII., it is unnecessary to substantively address attorneys' fees and costs now.

### **VI.   Conclusion**

After due consideration, it is

**RECOMMENDED**:

1. That the Joint Motion to Authorize Notice of Fair Labor Standards Act Settlement to Plaintiffs (Doc. No. 118) be **GRANTED.**

2. That the Court enter an Order similar in form and substance to the Order attached to the Motion as Exhibit 3.

**RESPECTFULLY RECOMMENDED** in Jacksonville, Florida on June 23, 2020.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:

Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record