**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

_____

**SHERI MOSLEY** individually and
on behalf all others similarly situated,

                **Plaintiffs,**

**v.**                                    **Case No: 3:19-cv-00379-TJC-JRK**

**LOZANO INSURANCE ADJUSTERS,
INC., FRANK LOZANO, LISETTE
LOZANO, ANCHOR INSURANCE
HOLDINGS, INC. and KEVIN
PAWLOWSKI,**

                **Defendants.**
_____


**JOINT MOTION FOR FINAL APPROVAL OF FAIR LABOR STANDARDS ACT
SETTLEMENT**

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................1

II.   FACTS ...............................................................................................................2

      A.   Procedural History, Settlement Negotiations, Preliminary Approval, and Issuance of
           Notice .......................................................................................................2

      B.   Plaintiffs' Valuation of the Claims and Settlement .............................................5

      C.   The Settlement Agreement ...........................................................................7

III.  ARGUMENT .......................................................................................................8

      A.   The Court Should Grant Final Approval Because the Settlement Meets the
           Requirements for Final Approval and No Plaintiffs Have Objected or Opted Out..........8

           1.   A Bona Fide Dispute Exists Between the Parties ...................................................10

           2.   The Proposed Settlement Is Fair and Reasonable ...................................................11

                a.  The Settlement Is the Result of Arm's Length Negotiations (Factor 1)...............11

                b.  Continued Litigation Would Be Complex, Expensive, and Lengthy and Plaintiffs
                    Faced Litigation Risk (Factors 2 and 4) .............................................................12

                c.  Plaintiffs' Recovery Is Fair and Reasonable (Factor 5)........................................13

                d.  Class Counsel Believes the Settlement is Fair and Reasonable (Factor 6)...........14

                e.  The Settlement's Release Provision Is Proper ......................................................15

      B.   The Court Should Approve the Proposed Service Award Because the Named Plaintiff
           Provided a Substantial Service to the Settlement Class ...................................................16

      C.   The Court Should Approve Class Counsel's Requested Attorneys' Fees and Costs
           Because the Award of Attorneys' Fees is Mandatory and Because Class Counsel's Fees
           and Costs are Reasonable ...............................................................................................18

           1.   The Award of Attorneys' Fees to the Prevailing Party is Mandatory Under the
                FLSA .................................................................................................................18

           2.   Class Counsel's Requested Fees of One-Third of the Settlement Fund Are
                Reasonable and Typical in FLSA Cases ..............................................................19

           3.   A Lodestar Cross-check Supports the Reasonableness of Class Counsel's Fees, as
                the Lodestar is Two Times Higher Than Counsel's Requested Fees......................22

4.   Class Counsel's Requested Costs Are Reasonable ...................................................24

IV.  CONCLUSION...........................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.H. Phillips v. Walling*,
    324 U.S. 490 (1945).................................................................................................18

*Alyeska Pipeline v. Wilderness Society*,
    421 U.S. 240 (1975).................................................................................................18

*Atkinson v. Wal–Mart Stores, Inc.*,
    Case No. 08–cv–691, 2011 WL 6846747 (M.D. Fla. Dec. 29, 2011) ....................21

*Barrentine v. Arkansas-Best Freight System, Inc.*,
    450 U.S. 728 (1981)...................................................................................................8

*Behrens v. Wometco Enterprises, Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988), *aff'd sub nom. Behrens v. Wometco*
    *Enterprises*, 899 F.2d 21 (11th Cir. 1990) ......................................................13, 14

*Bonetti v. Embarq Mgmt. Co.*,
    715 F. Supp. 2d 1222 (M.D. Fla. 2009)..................................................................15

*Brooklyn Savings Bank v. O'Neil*,
    324 U.S. 697 (1945)...................................................................................................8

*Brown v. Lee Mem'l Health Sys. Found., Inc.*,
    No. 219CV546FTM38MRM, 2019 WL 6879521 (M.D. Fla. Dec. 1, 2019),
    *report and recommendation adopted*, No. 219CV546FTM38MRM, 2019 WL
    6877171 (M.D. Fla. Dec. 17, 2019)..........................................................................9

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ................................................................................19

*Carlson v. FedEx Ground Package Sys., Inc.*,
    787 F.3d 1313 (11th Cir. 2015) ..............................................................................20

*Chacon v. El Milagro Care Ctr., Inc.*,
    No. 07-22835-CIV, 2010 WL 3023833 (S.D. Fla. July 29, 2010) .........................22

*Chase v. N. Fla. Bldg. Maint., LLC*,
    No. 3:20-CV-94-J-34JRK, 2020 WL 3848081 (M.D. Fla. June 17, 2020)
    (Klindt, J.), *report and recommendation adopted*, No. 3:20-CV-94-J-34JRK,
    2020 WL 3833460 (M.D. Fla. July 8, 2020) ..........................................................24

*In re Checking Account Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...........................................................14, 19

*City of Burlington v. Dague*,
   505 U.S. 557 (1992)....................................................................................................22

*Coleman v. Target Corp.*,
   No. 6:12-CV-1315-ORL-37, 2013 WL 867891 (M.D. Fla. Mar. 1, 2013)............................15

*Dail v. George A. Arab Inc.*,
   391 F. Supp. 2d 1142 (M.D. Fla. 2005)..................................................................18

*Dees v. Hydradry, Inc.*,
   706 F. Supp. 2d 1227 (M.D. Fla. 2010)..................................................................11

*Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*,
   445 U.S. 326 (1980)....................................................................................................18

*George v. Acad. Mortg. Corp. (UT)*,
   369 F. Supp. 3d 1356 (N.D. Ga. 2019) ...........................................................17, 21

*Hosier v. Mattress Firm, Inc.*,
   No. 3:10-CV-294-J-32JRK, 2012 WL 2813960 (M.D. Fla. June 8, 2012),
   *report and recommendation adopted*, No. 3:10-CV-294-J-32JRK, 2012 WL
   2838610 (M.D. Fla. July 10, 2012)...........................................................16, 17, 21

*Lipuma v. Am. Express Co.*,
   406 F. Supp. 2d 1298 (S.D. Fla. 2005) ..................................................................13

*Lockwood v. CIS Servs., LLC*,
   No. 3:16-CV-965-J-39PDB, 2019 WL 2226126 (M.D. Fla. May 3, 2019),
   *report and recommendation adopted*, No. 3:16-CV-965-J-39PDB, 2019 WL
   3383628 (M.D. Fla. June 13, 2019) ........................................................................24

*Lynn's Food Stores, Inc. v. U.S.*,
   679 F.2d 1350 (11th Cir. 1982) .........................................................2, 9, 10, 18

*Madison v. United Site Servs. of Fla., Inc.*,
   No. 616CV1991ORL41DCI, 2018 WL 2211419 (M.D. Fla. Apr. 18, 2018),
   *report and recommendation adopted as modified*, No.
   616CV1991ORL41DCI, 2018 WL 2197757 (M.D. Fla. May 14, 2018) .............................17

*Martin v. Spring Break '83 Prods., L.L.C.*,
   688 F.3d 247 (5th Cir. 2012) *cert. denied,* 133 S. Ct. 795, 184 L. Ed. 2d 583
   (U.S. 2012).....................................................................................................................9

*Missouri v. Jenkins*,
   491 U.S. 274 (1989).....................................................................................................23

iv

*P&k Rest. Enter., LLC v. Jackson*,
  758 F. App'x 844 (11th Cir. 2019) .......................................................18

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986)..........................................................................22

*Pierre-Val v. Buccaneers Ltd. P'ship*,
  No. 814CV01182CEHEAJ, 2015 WL 12843849 (M.D. Fla. Dec. 7, 2015) ..........................21

*Poole v. Tire Recycling Servs. of Fla., Inc.*,
  No. 218CV810FTM99MRM, 2020 WL 1496151 (M.D. Fla. Feb. 24, 2020) ,
  *report and recommendation adopted*, No. 218CV810FTM38MRM, 2020 WL
  1492869 (M.D. Fla. Mar. 27, 2020)............................................................9

*Saccoccio v. JP Morgan Chase Bank*,
  N.A., 297 F.R.D. 683, 692 (S.D. Fla. 2014) ....................................................11

*Schiraldi v. Quality One Wireless, Inc.*,
  No. 610-CV-547-ORL-28GJK, 2010 WL 4342069 (M.D. Fla. Oct. 1, 2010),
  *report and recommendation adopted*, No. 6:10-CV-547-ORL-28, 2010 WL
  4337914 (M.D. Fla. Oct. 27, 2010)..........................................................12

*Strube v. American Equity Inv. Life Ins. Co.*,
  226 F.R.D. 688 (M.D. Fla. 2005)............................................................14

*Su v. Elec. Arts, Inc.*,
  No. 6:05CV131ORL28JGG, 2006 WL 4792780 (M.D. Fla. Aug. 29, 2006),
  *report and recommendation adopted*, No. 6:05CV131OR;28JGG, 2007 WL
  2780899 (M.D. Fla. Sept. 20, 2007) .....................................................17, 23

*Vogenberger v. ATC Fitness Cape Coral, LLC*,
  No. 2:14-CV-436-FTM-29CM, 2015 WL 1883537 (M.D. Fla. Apr. 24, 2015)...............19, 21

*Williams v. Omainsky*,
  No. CV 15-0123-WS-N, 2017 WL 390272 (S.D. Ala. Jan. 27, 2017) ....................................17

*Wolff v. Royal Am. Mgmt., Inc.*,
  545 F. App'x 791 (11th Cir. 2013) .......................................................18

**Statutes**

28 U.S.C. § 1920...................................................................................24

29 U.S.C. § 202(a) ..................................................................................8

29 U.S.C. § 216(b) ..........................................................................9, 18, 24

29 U.S.C. § 255..................................................................................10

**Rules**

Fed. R. Civ. P. Rule 23 ...................................................................................................................20

**Other Authorities**

NERA Economic Consulting, "Trends in Wage and Hour Settlements: 2015
    Update." ..........................................................................................................................14

## I.    INTRODUCTION

The Named Plaintiff, Sheri Mosely, and Defendants Lozano Insurance Adjusters, Inc., Frank Lozano, Lisette Lozano, Anchor Insurance Holdings, Inc., and Kevin Pawlowski (collectively, "Defendants") have signed a Collective Action Settlement Agreement (the "Settlement Agreement"), attached hereto as Exhibit 1, resolving this Fair Labor Standards Act ("FLSA") case and respectfully request that the Court:

1) Grant final approval of the Settlement Agreement;

2) Approve a service award of $5,000.00 to the Named Plaintiff for her service to the settlement class;

3) Approve attorneys' fees of $200,000.00, which is approximately 52% of the lodestar, and costs of $3,837.25 (a summary of Class Counsel's costs, as well as documentation of such costs, is attached as Exhibit 2); and

4) Enter the order attached as Exhibit 3.

After more than a year of discovery, motions, one in-person settlement discussion, one in-person mediation, and extensive subsequent settlement discussions and negotiations, the Parties agreed to settle this case for $600,000. The Named Plaintiff has signed the Settlement Agreement and approves this settlement. Defendants too have approved of the settlement. On May 1, 2020, the Parties jointly requested that the Court approve the form and the mailing of a Settlement Notice. The Court approved such Settlement Notice on July 14, 2020 (Docs. 121, 122) and Settlement Notice was mailed to Plaintiffs on July 9, 2020. The Notice informed the Plaintiffs about the settlement, its terms, and the Plaintiffs' options, including the right to object or opt-out within the Notice period. The Notice specifically informed each Plaintiff of their estimated recovery, that Class Counsel would seek a $5,000.00 service award for the Named Plaintiff, and that Class

Counsel would seek to recover from the settlement funds costs of approximately $3,837.25 and attorneys' fees in an amount not to exceed $200,000 (one-third of the Gross Settlement Amount). The Notice period ended on August 8, 2020, with no Plaintiffs objecting or opting out of the proposed settlement.

Plaintiffs now ask the Court to approve the settlement, a service award to the Named Plaintiff, and attorneys' fees and costs. Because this is not a supervised U.S. Department of Labor settlement, the Parties cannot effectuate their settlement agreement without the Court's review and approval. Courts evaluate FLSA settlements under the Eleventh Circuit's *Lynn's Food Stores*[1] standard: (1) the FLSA settlement must involve the resolution of a bona fide dispute over an FLSA provision and (2) the settlement must be fair and reasonable. The settlement here meets both criteria, providing a substantial settlement on behalf of 93 Plaintiffs to resolve their bona fide FLSA dispute with Defendants. Consequently, the Court should approve the settlement. Upon approval, and assuming there are no appeals, settlement checks will be mailed to Plaintiffs who did not opt out of the settlement (Settling Plaintiffs), the attorneys' fees and costs will be paid, and Settling Plaintiffs will release their wage-and-hour claims as described in the Settlement Agreement.

The Parties request that the Court grant this motion and approve their settlement.

## II.    FACTS

### A. Procedural History, Settlement Negotiations, Preliminary Approval, and Issuance of Notice

Named Plaintiff Sheri Mosley, individually and on behalf of all others similarly situated, filed her initial complaint on April 3, 2019. Doc. 1. Plaintiff Mosley alleged she was employed by

---

[1] *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982).

Defendants "as an insurance claims handler in their Jacksonville, FL offices" and she, together with a number of other insurance claims handlers, "regularly worked far in excess of 40 hours in a week," time for which they were not paid overtime wages. *Id.* at 1. The Court designated the case for special handling. Doc 4, Track Notice and FLSA Scheduling Order. Pursuant to the Track Notice and FLSA Scheduling Order, the Parties actively sought to resolve the claims prior to extensive litigation. *Sweeney Decl.*[2] at ¶ 7. Counsel for the Parties met on July 29, 2019 in Tampa, FL and conferred in person in a good faith effort to settle all pending issues. *Id.* Although the Parties did not settle all pending issues at the July 29 meeting, they continued settlement discussions. *Id.* at ¶ 8.

On September 5, 2019, the Court adopted the Parties' stipulation for Notice to the FLSA collective. Doc. 67. Ninety-two Plaintiffs opted into the action in addition to the Named Plaintiff. *Sweeney Decl.* at ¶ 10. The Parties exchanged extensive information for the purposes of settlement negotiations. *Sweeney Decl.* at ¶ 13. An arm's length in-person mediation took place on January 28, 2020 in Tampa, FL with the guidance of seasoned and respected mediator Marlene Quintana, but the Parties did not resolve the claims. *Id.* at ¶ 14; *see also* Doc. 106 (Mediator's Report). The primary reason that the Parties' settlement negotiations stalled was Defendants' deteriorated financial condition. *Id.* at ¶ 15. As Kevin Pawlowski, the then CEO of Defendant Anchor Insurance Holdings (AIH) testifies, AIH is the parent of Defendant Lozano Insurance Adjusters, Inc. (LIA), along with two other subsidiaries, Anchor Property and Casualty Insurance Company (APC) and Anchor Specialty Insurance Company (ASIC). *See Pawlowski Decl.*[3] at ¶ 3. In order to operate APC and ASIC, AIH obtained loans that currently total approximately $28,300,000 through its

---

[2] Declaration of Michael J.D. Sweeney in Support of Joint Motion for Final Approval of Fair Labor Standards Act Settlement ("*Sweeney Decl.*").
[3] Declaration of Kevin Pawlowski ("*Pawlowski Decl.*").

subsidiaries, including LIA. *Id.* at ¶ 4. Despite the loans, the rating of one of the subsidiaries, APC, was downgraded and the company was put into public administrative supervision. *Id.* at ¶¶ 5-6. With its other insurance subsidiary, ASIC, facing a similar fate, AIH entered into a stock purchase agreement with a third party to sell ASIC. *Id.* at ¶ 8. At this juncture, AIH's only income-producing subsidiary is LIA, which is jointly liable for AIH's outstanding debt. *Id.* at ¶ 9.

Subsequent to the mediation, the Parties continued active settlement discussions via numerous emails and telephone calls. *Sweeney Decl.* at ¶ 16. Given AIH and LIA's debt, the Defendants represented that they were  unable to pay a settlement in excess of $600,000. *Pawlowski Decl.* at ¶ 9. Defendants shared certain financial documents with Class Counsel and made their counsel available to respond to questions. *Sweeney Decl.* at ¶ 18. Based on that investigation, Class Counsel believes that there is a substantial risk that Defendants would be unable to satisfy a judgment if Plaintiffs were to prevail on their claims. *Id.* at ¶ 19. The Parties entered into a settlement in principle on February 21, 2020 and executed a detailed settlement term sheet that memorializes the material aspects of the settlement on February 28, 2020. *Id.* at ¶ 20. The Parties then continued to negotiate the terms of the Settlement Agreement and on May 1, 2020, entered into the Settlement Agreement attached hereto as Exhibit 1. *Id.* at ¶ 21.

On May 1, 2020, the Parties filed a Joint Motion to Authorize Notice of Fair Labor Standards Settlement to Plaintiffs. Doc. 118. The Court granted the Parties' motion, preliminarily approving the Settlement Agreement, and approving the form, content and mailing of the Parties' proposed Notice to Plaintiffs. Docs. 121, 122. In granting the Parties' motion, the Court found that "the FLSA settlement involves the resolution of a bona fide dispute over an FLSA provision and because the settlement appears fair and reasonable." Doc. 122 at ¶ 5. On July 9, 2020, Class Counsel issued the Notice to Plaintiffs by First Class Mail. *Sweeney Decl.* at ¶ 24. The Notice

informed the Plaintiffs about the settlement, its terms, and the Plaintiffs' options, including the right to object or opt-out within the Notice period. *See* Doc. 188-2. The Notice specifically informed each Plaintiff of their estimated recovery, that Class Counsel would seek a $5,000.00 service award for the Named Plaintiff, and that Class Counsel would seek to recover from the settlement funds costs of approximately $3,837.25 and attorneys' fees in an amount not to exceed $200,000 (one-third of the Gross Settlement Amount). *See id*. The Notice period ended on August 8, 2020, with no Plaintiffs objecting or opting out of the proposed settlement. *Sweeney Decl.* at ¶ 27.

### B.  Plaintiffs' Valuation of the Claims and Settlement

To determine the value of the case for mediation, Plaintiffs calculated one set of damages to share with Defendants and another set for internal purposes. *Sweeney Decl.* at ¶ 28. To calculate damages, Plaintiffs used Defendants' wage-and-hour records, Plaintiffs' employment history, the weeks Plaintiffs worked, and the hours Plaintiffs worked. *Id.* at ¶ 29. Plaintiffs' damage calculations incorporated the statute of limitations and FLSA liquidated damages. *Id.* at ¶ 30. Then in advance of mediation, Plaintiffs provided damages to Defendants. *Id.* at ¶ 31.

Plaintiffs also created an internal damages spreadsheet to calculate the various litigation risks. *Id.* at ¶ 32. Some of the risks Plaintiffs considered included: Defendants' defenses to paying overtime wages, including that Plaintiffs were properly classified independent contractors; the administrative and highly compensated employee exemptions; Plaintiffs' ability to prove that Defendants willfully violated the FLSA; Defendants' good faith defense to liquidated damages; Plaintiffs' ability to prove the case collectively; and Defendants' defenses to the hours Plaintiffs claimed they worked. *Id.* at ¶ 33. For example, Plaintiffs would recover little or no damages if they were unable to prove Plaintiffs were employees rather than independent contractors or if

Defendants proved that Plaintiffs were exempt from the FSLA overtime provisions. *Id.* at ¶ 34. Similarly, if Plaintiffs succeeded on their back-wage claims but Defendants established that their failure to pay overtime wages was reasonable and in good faith, Plaintiffs' damages would be reduced by almost half, and if Plaintiffs did not prove that Defendants willfully violated the FLSA, limiting the applicable statute of limitations to two years, then many Plaintiffs would recover nothing. *Id.* at ¶ 35. In addition, if Defendants lost the case then Defendants would likely appeal and further delay Plaintiffs' payment. *Id.* at ¶ 36. Finally, Defendants' financial condition, detailed in the declaration of Kevin Pawlowski, added the risk that Defendants would not be able to pay in full if Plaintiffs obtained a judgment against them. *Id.* at ¶ 37. Based on those various risks, counsel was able to advise the Named Plaintiff as to whether she should accept Defendants' settlement offer. *Id.* at ¶ 38.

Named Plaintiff Mosley was critical for the litigation of this case, as well as mediation and settlement discussions. *Id.* at ¶ 39. She represented not only her interests, but the interests of all of the other Plaintiffs, too. *Id.* at ¶ 40. Plaintiff Mosley provided information during Class Counsel's pre-complaint investigation of the case; supplied facts for the complaint and the motion for conditional certification; answered court interrogatories and provided Class Counsel with documents; actively participated in the settlement conference and mediation; and provided Class Counsel with information and advice on settlement. *Id.* at ¶ 41. Throughout the litigation and settlement process, Plaintiff Mosley kept in regular contact with Class Counsel for whatever was needed. *Id.* at ¶ 42. By acting as Named Plaintiff, she put herself forward in a close-knit industry, risking her future employment. *Id.* at ¶ 43. And Plaintiff Mosley approved the settlement the Parties ultimately reached. *Id.* at ¶ 44.

### C.  The Settlement Agreement

The Settlement is structured so that every Plaintiff, including the Named Plaintiff, was given the right to opt out of the settlement and preserve their right to bring claims against the Defendants, though no Plaintiff actually exercised that right. *Id.* at ¶¶ 45, 27. The $600,000 settlement provides a substantial benefit to all Settling Plaintiffs. *Id.* at ¶ 49. The settlement agreement was the result of one in-person settlement conference, one in-person mediation, extensive negotiations by the Parties' counsel, and compromises by both Parties. *Id.* at ¶ 50. In addition, the settlement agreement is the product of negotiations over the course of two months to create the final settlement details. *Id.* at ¶ 51. Named Plaintiff Mosley signed the settlement. *Id.* at ¶ 52. If this motion is approved, then Plaintiffs will receive money for their unpaid overtime wages. *Id.* at ¶ 53. The basic timeline of the remaining settlement events is listed below:

| | |
|---|---|
| Checks provided to Class Counsel for mailing to Settling Plaintiffs | Within 30 days of the Court's final approval of the settlement |
| Reallocation of uncashed funds to Settling Plaintiffs who cashed their checks, if necessary. | 120 days from date of issue of initial checks |

The settlement agreement provides Plaintiffs with a significant recovery. Overall, it is estimated that Plaintiffs will recover an average of approximately $6,450.[4] *Id.* at ¶ 56. Each Plaintiff's individual recovery is based on their pay and the number of weeks worked. Plaintiffs' recovery is calculated based on their scheduled hours plus an average of five (5) additional hours worked outside the scheduled hours to determine the number of hours worked each week. *Id.* at ¶ 57. After Plaintiffs calculated the total damages, Plaintiffs prorated their settlement recovery after making deductions for a service award, attorneys' fees at one-third, and costs. *Id.* at ¶ 58. Named

---

[4] This is before service awards, attorneys' fees at one-third, and costs are deducted. *Sweeney Decl.* at ¶ 56. After these deductions, the average recovery will be approximately $4,200. *Id.*

Plaintiff Mosley will receive a service award of up to $5,000 for her service on behalf of the Plaintiffs. *Id.* at ¶ 59. By agreeing to and participating in the settlement, Plaintiffs will release their claims for overtime wages and claims for business expenses improperly incurred as a result of being misclassified as an independent contractor as described in the Settlement Agreement at § IV. *Id.* at ¶ 60.

After the Court provides final approval, Defendants will provide settlement checks to Class Counsel for mailing to Settling Plaintiffs. *Id.* at ¶ 61. Any funds from checks that are uncashed after 120 days will be re-allocated by Class Counsel among the Settling Plaintiffs who received and cashed their checks and Defendants shall issue checks based on that allocation. *Id.* at ¶ 62. If the Parties agree that re-allocation of uncashed funds is impractical, the funds will be given to a *cy pres* recipient of Class Counsel's choosing. *Id.* at ¶ 63.

## III.    ARGUMENT

### A.    The Court Should Grant Final Approval Because the Settlement Meets the Requirements for Final Approval and No Plaintiffs Have Objected or Opted Out

Congress designed the FLSA to protect workers from "substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981) *quoting* 29 U.S.C. § 202(a). Thus, to protect workers, a FLSA claim typically cannot be waived or settled except in two circumstances. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945). The exceptions are (1) that the Secretary of Labor supervises the back-wage payments or (2) that the court approves

the proposed settlement between the employer and employees. 29 U.S.C. § 216(b); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353-54 (11th Cir. 1982).[5]

The Court should grant final approval to the Parties' Settlement Agreement because the settlement meets the requirements for final approval. Most courts, including this one, evaluate FLSA settlements under the Eleventh Circuit's *Lynn's Food Stores* standard. *Lynn's Food Stores, Inc.*, 679 F.2d at 1350; *Poole v. Tire Recycling Servs. of Fla., Inc.*, No. 218CV810FTM99MRM, 2020 WL 1496151, at *2 (M.D. Fla. Feb. 24, 2020), *report and recommendation adopted*, No. 218CV810FTM38MRM, 2020 WL 1492869 (M.D. Fla. Mar. 27, 2020); *Brown v. Lee Mem'l Health Sys. Found., Inc.*, No. 219CV546FTM38MRM, 2019 WL 6879521, at *1 (M.D. Fla. Dec. 1, 2019), *report and recommendation adopted*, No. 219CV546FTM38MRM, 2019 WL 6877171 (M.D. Fla. Dec. 17, 2019). Under *Lynn's Food Stores* (1) an FLSA settlement must involve the resolution of a bona fide dispute over an FLSA provision and (2) the settlement must be fair and reasonable. *See id.*

The Eleventh Circuit has found settlements to be permissible when employees bring a lawsuit under the FLSA for back wages. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. Specifically, the Eleventh Circuit held:

> [A lawsuit] provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

---

[5] The Fifth Circuit and some district courts have found that under certain circumstances, private FLSA settlements can bind parties even without court or Department of Labor approval. *See Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2012) *cert. denied,* 133 S. Ct. 795, 184 L. Ed. 2d 583 (U.S. 2012), (citations omitted).

*Id.* Here, Plaintiffs brought a lawsuit, in which they were represented by competent counsel, that has resulted in a settlement that resolves bona fide disputes regarding the FLSA and that is fair and reasonable. Indeed, this Court has already preliminarily found that the Parties' settlement involves the resolution of a bona fide FLSA dispute and that the settlement is fair and reasonable. Doc. 121 at p. 7 ("In light of the foregoing, it appears there are legitimate reasons for the compromise, and the proposed settlement is fair and reasonable."); Doc. 122 at ¶ 5 ("The parties' proposed Collective Action Settlement Agreement (Doc. 118-1) is preliminarily approved because the FLSA settlement involves the resolution of a bona fide dispute over an FLSA provision and because the settlement appears fair and reasonable."). The fact that no Plaintiff has objected to or opted out of the settlement confirms the Court's finding that the settlement is fair and reasonable.

### 1.  A Bona Fide Dispute Exists Between the Parties

This litigation included many bona fide disputes ranging from whether Plaintiffs are due overtime wages at all, to whether Defendants' violations of the FLSA, if any, were willful. The issues were actively litigated over the course of more than a year. For example, Defendants denied that Plaintiffs are due any overtime wages at all and maintained throughout the litigation that Plaintiffs were properly classified as independent contractors and thus were not covered by the FLSA overtime requirements. They also argued that if Plaintiffs were covered by the FLSA, they were exempt from its overtime provisions in any case because they fell under the administrative and/or highly compensated employee exemptions. They raised an affirmative statute of limitations defense that could have reduced any recovery of FLSA claims from three to two years. *See* 29 U.S.C. § 255 (providing for a two-year statute of limitations unless employee can establish employer acted willfully). Defendants also raised a good faith defense to paying liquidated damages. Moreover, Plaintiffs had an affirmative burden to establish the overtime hours that they

worked for both the testifying and non-testifying class members. There is no question that bona fide disputes exist between the Parties.

### 2.    The Proposed Settlement Is Fair and Reasonable

In determining fairness, courts consider such factors as (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010). A review of these factors establish that this settlement is fair.

### a.    The Settlement Is the Result of Arm's Length Negotiations (Factor 1)

There is a presumption of good faith in the negotiation process. *Saccoccio v. JP Morgan Chase Bank*, N.A., 297 F.R.D. 683, 692 (S.D. Fla. 2014) (finding no collusion in part because the parties worked with a mediator and because the case was intensively litigated). Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion. *Id.* Further, where the case proceeds adversarially, this counsels against a finding of collusion. *Id.* Here, the settlement resulted after a year of vigorous litigation, significant discovery, one in-person settlement conference, and one in-person mediation with the assistance of an experienced mediator, and extensive post-mediation negotiations. The Parties were also represented by experienced wage-and-hour attorneys, who have strongly negotiated many settlements on behalf of employers and workers. Accordingly, the settlement was not the product of collusion.

### b. Continued Litigation Would Be Complex, Expensive, and Lengthy and Plaintiffs Faced Litigation Risk (Factors 2 and 4)

FLSA settlements are fair and reasonable when plaintiffs' counsel considers the complexity, expense and length of continued litigation, as well as various litigation risks. *See, e.g.*, *Schiraldi v. Quality One Wireless, Inc.*, No. 610-CV-547-ORL-28GJK, 2010 WL 4342069, at *2 (M.D. Fla. Oct. 1, 2010), *report and recommendation adopted*, No. 6:10-CV-547-ORL-28, 2010 WL 4337914 (M.D. Fla. Oct. 27, 2010) (approving FLSA settlement because "in deciding to compromise Plaintiff's damages claim, Plaintiff considered the complexity, expense, and length of future litigation because the parties continue to disagree over the merits of Plaintiff's claim"). Here, in settling the case, Plaintiffs took into account the fact that continued litigation would be complex, expensive, and protracted. Continued litigation would undoubtedly be complex and lengthy as there are many issues that Plaintiffs would have to take discovery on and prove at trial in order to recover, including showing that they were misclassified as independent contractors, did not fall under any exemptions to the overtime provisions of the FLSA, and worked overtime hours. Litigating these issues would take many attorney hours and extensive resources, as Defendants would have vigorously contested each issue, making continued litigation costly.

Additionally, there were many risks in this case, including whether Plaintiffs could prove Defendants willfully violated the FLSA, proving the number of hours worked, proving the merits of the case, and maintaining a collective action class. An additional risk is Defendants' financial condition, which makes recovery of a full judgment risky, even if Plaintiffs were to prevail on every aspect of their case. Further, as described above, this case involved many bona fide disputes, any one of which could have substantially reduced the Plaintiffs' recovery. As the Court has recognized, there is an additional risk in this case that successful continued litigation may drive the Defendants into insolvency and result in no recovery at all for the Plaintiffs. See Doc. 121 at

p. 6 ("Even if Plaintiffs prevail, the recovery of any monetary judgment by Plaintiffs could be particularly risky because of Defendants' current financial condition."). The settlement takes into account the complexity, cost, length, and risk of continued litigation.

### c.  Plaintiffs' Recovery Is Fair and Reasonable (Factor 5)

In looking at this factor, the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality. *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005). Moreover, the existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable. *Id.* Thus, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd sub nom. Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990).

As importantly, this settlement reflects a substantial risk that if Plaintiffs continue the litigation, Defendants would be unable to satisfy a judgment. The corporate Defendants, AIH and LIA, are jointly saddled with more than $28,000,000 in debt. Two of AIH's income producing subsidiaries no longer produce income for AIH due to administrative receivership in the case of APC and the sale of ASIC. Although accurately predicting the future financial condition of Defendants is impossible, there is a substantial risk that the debt burden along with a substantial judgment in this case will drive Defendants into insolvency. This settlement allows each Plaintiff to make his or her own decision as to whether to avoid the risk and recover now or to continue the litigation and seek a higher recovery at the risk of not recovering at all.

Here, the average recovery is approximately $6,450.[6] This recovery is in line with the risks Plaintiffs faced in proving their case and in obtaining the full damages sought. Additionally, this recovery is far higher than the average per plaintiff recovery of $1,097 in wage-and-hour actions between 2007 and 2015. *See*, NERA Economic Consulting, "Trends in Wage and Hour Settlements: 2015 Update."[7] Also, considering the risks, courts in this Circuit regularly approve settlements that are less than total damages. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (approving settlement representing between 4.5 percent and 9 percent of total potential damages); *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (approving settlement equal to about 2% of expert's damages calculation); *Behrens*, 118 F.R.D. at 542-43 (S.D. Fla. 1988) (approving settlement equal to 3 to 5% of the per share recovery sought by plaintiffs).

Not only does the settlement recover a significant amount for each Plaintiff, it also provides them with a recovery without having to go through a long trial and appeal process and bear the risk of being unsuccessful, and to avoid the risk of Defendants' insolvency. Significantly, not a single Plaintiff has objected to or opted out of the settlement after receiving a Settlement Notice that provided each Plaintiff with an estimate of their recovery. This indicates that Plaintiffs believe that the Settlement Agreement is fair and reasonable.

### d. Class Counsel Believes the Settlement is Fair and Reasonable (Factor 6)

In examining this factor, this Court has recognized that counsel is generally in a better position than the Court to assess the fairness and reasonableness of a settlement:

---

[6] This is before service awards, attorneys' fees at one-third, and costs are deducted. After these deductions, the average recovery will be approximately $4,200.

[7] Available at http://www.nera.com/publications/archive/2015/trends-in-wage-and-hour-settlements-2015-update.html.

> Short of a bench trial, the Court is generally not in as good a position as the parties
> to determine the reasonableness of an FLSA settlement. Many factors may be in
> play as the parties negotiate a compromise that is acceptable to both sides. The
> parties may disagree as to the number of hours worked by the plaintiff, the plaintiff's
> status as an exempt employee, or the defendant's status as a covered employer. In
> certain cases, the Defendant may assert (or threaten to assert) a counterclaim arising
> from the employment relationship. If the parties are represented by competent
> counsel in an adversary context, the settlement they reach will, almost by definition,
> be reasonable. Rarely will the Court be in a position to competently declare that
> such a settlement is "unreasonable."

*Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009). Here, Class Counsel, in an adversarial context, has litigated this case for more than a year and vigorously negotiated a settlement. The settlement takes into account the strengths and weaknesses of Plaintiffs' case, as well as various risks, including Defendants' financial position, which Class Counsel is in a better position to evaluate than the Court. Class Counsel believes the settlement is fair and reasonable and satisfactorily compensates Plaintiffs given the various risks, including the risk of insolvency. It is also fair and reasonable because it allows any Plaintiff who wants to shoulder the risk of insolvency to opt-out of the Settlement and retain his or her right to continue to pursue the claims.

### e.  The Settlement's Release Provision Is Proper

Courts also review the scope of the release in evaluating whether the settlement is reasonable. If the release tracks the breadth of the allegations in the action then courts find that the release is proper. *See, e.g.*, *Coleman v. Target Corp.*, No. 6:12-CV-1315-ORL-37, 2013 WL 867891, at *6 (M.D. Fla. Mar. 1, 2013) (discussing the impropriety of broad general releases in FLSA settlements and approving the release provisions before it because they were "limited to claims for unpaid wages and any other wage and hour or related claims that were raised in this action, are based on the same factual predicate as this action, or could have been raised in this action"). Here, the release is tailored to the claims that were raised or could have been raised in

15

the case. Additionally, the release extends only through September 30, 2019. Thus, the release confirms that the settlement is fair and reasonable.

### B. The Court Should Approve the Proposed Service Award Because the Named Plaintiff Provided a Substantial Service to the Settlement Class

The Notice sent to all Plaintiffs informed them that the settlement provides for a service award to the Named Plaintiff of up to $5,000. The Notice explained that the service award is for the Named Plaintiff's risks, her representation of the other Plaintiffs, and for her time and efforts on behalf of the many Plaintiffs who will recover unpaid overtime wages. Again, not a single Plaintiff has objected to or opted out of the settlement. This indicates that Plaintiffs support a service award to the Named Plaintiff for her service to the settlement class in helping to obtain a significant recovery for them.

Named Plaintiff Mosley was critical for the litigation of this case, as well as mediation and settlement discussions. She represented not only her interests, but the interests of all of the other Plaintiffs, too. Plaintiff Mosley provided information during Class Counsel's pre-complaint investigation of the case; supplied facts for the complaint and the motion for conditional certification; answered court interrogatories and provided Class Counsel with documents; actively participated in the settlement conference and mediation; and provided Class Counsel with information and advice on settlement. Throughout the litigation and settlement process, Plaintiff Mosley kept in regular contact with Class Counsel for whatever was needed. By acting as Named Plaintiff, she put herself forward in a close-knit industry, risking her future employment. And Plaintiff Mosley approved the settlement the Parties ultimately reached.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Hosier v. Mattress Firm, Inc.*, No. 3:10-CV-294-J-32JRK, 2012 WL 2813960, at *5 (M.D. Fla. June 8,

2012), *report and recommendation adopted*, No. 3:10-CV-294-J-32JRK, 2012 WL 2838610 (M.D. Fla. July 10, 2012) (approving service awards in FLSA case ranging from $500 to $2,000 to named plaintiff and 12 opt-ins who assisted in discovery process totaling less than 1% of settlement fund). The service award proposed here is consistent with the amounts approved by this Court and other courts in this Circuit and equals less than 1% of the settlement fund. *See, e.g.*, *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1374 (N.D. Ga. 2019) (approving service award of $7,500 for named plaintiff and $1,000 each to eight named state class representatives totaling less than 1.7% of the settlement fund); *Madison v. United Site Servs. of Fla., Inc.*, No. 616CV1991ORL41DCI, 2018 WL 2211419, at *3 (M.D. Fla. Apr. 18, 2018), *report and recommendation adopted as modified*, No. 616CV1991ORL41DCI, 2018 WL 2197757 (M.D. Fla. May 14, 2018) (approving $5,000 service award to named plaintiff); *Williams v. Omainsky*, No. CV 15-0123-WS-N, 2017 WL 390272, at *5 (S.D. Ala. Jan. 27, 2017) (approving service awards of $5,000 to each of five named plaintiffs); *Su v. Elec. Arts, Inc.*, No. 6:05CV131ORL28JGG, 2006 WL 4792780, at *5 (M.D. Fla. Aug. 29, 2006), *report and recommendation adopted*, No. 6:05CV131OR;28JGG, 2007 WL 2780899 (M.D. Fla. Sept. 20, 2007) (approving $10,000 service award to named plaintiff).

Because the proposed service award to Named Plaintiff Mosley is in line with service awards in this district, because Named Plaintiff Mosley was essential for the litigation and settlement of this case, and because the settlement class supports a service award to Named Plaintiff Mosley, the Court should approve the proposed $5,000 service award.

C.   **The Court Should Approve Class Counsel's Requested Attorneys' Fees and Costs Because the Award of Attorneys' Fees is Mandatory and Because Class Counsel's Fees and Costs are Reasonable**

1.   **The Award of Attorneys' Fees to the Prevailing Party is Mandatory Under the FLSA**

Because the FLSA is a remedial statute designed to protect workers and guarantee that minimum labor standards are applicable across the economy, fair compensation for attorneys who take on such litigation furthers the FLSA's purpose. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective of ensuring that every employee receives "a fair day's pay for a fair day's work"). Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discourage future misconduct of a similar nature. *See Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper,* 445 U.S. 326, 338–39 (1980). Thus, Section 216(b) of the FLSA provides that where an employee prevails in an action, attorneys' fees under FLSA are mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261, fn. 34 (1975); *P&k Rest. Enter., LLC v. Jackson*, 758 F. App'x 844, 850 (11th Cir. 2019) ("We have explained that prevailing FLSA plaintiffs are 'automatically entitled to attorneys' fees'"); *Dail v. George A. Arab Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005) ("An award of 'reasonable attorneys' fee[s] ... and costs' is mandatory under § 216(b) if the employer is held liable."; approving fees as part of settlement). Plaintiffs here are entitled to recover attorneys' fees and costs as the prevailing party because they have obtained a settlement that is a fair and reasonable resolution of a bona fide FLSA dispute. *Wolff v. Royal Am. Mgmt., Inc.*, 545 F. App'x 791, 793 (11th Cir. 2013), *quoting Lynn's Food Stores,* 679 F.2d at 1355 ("in the absence of a judgment on the merits, to be a prevailing party, the FLSA plaintiff needs a stipulated or consent judgment or its 'functional equivalent' from the district court

18

evincing the court's determination that the settlement 'is a fair and reasonable res[o]lution of a bona fide dispute over FLSA provisions'").

> **2. Class Counsel's Requested Fees of One-Third of the Settlement Fund Are Reasonable and Typical in FLSA Cases**

The Eleventh Circuit has recognized that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole. *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval"). In *Camden I*, the Eleventh Circuit held that:

> the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.

946 F.2d at 774; *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011) ("the Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive method for awarding fees in common fund class actions"). Factors for the Court's consideration regarding whether a particular percentage may be approved as reasonable include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment t by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Vogenberger v. ATC Fitness Cape Coral, LLC*, No. 2:14-CV-436-FTM-29CM, 2015 WL 1883537, at *4 (M.D. Fla. Apr. 24, 2015).

Here, the settlement agreement signed by the Parties provides for attorneys' fees of up to one-third of the settlement fund. *See* Ex. 1 at ¶ I.A.2. As set forth in the declaration of Mike Sweeney in support of this motion, an examination of the relevant factors shows that one-third of the settlement fund is reasonable. Class Counsel expended significant time and labor to obtain the settlement. *See Sweeney Decl.* at ¶¶ 4-38, 64. The questions raised, while not novel, were complex, involving claims under both federal and state law, and involving both a collective action under the FLSA and a potential Rule 23 class. *See* Doc. 1. Additionally, the case involved the intricate and fact-intensive question of whether Plaintiffs were properly classified as independent contractors. See *Carlson v. FedEx Ground Package Sys., Inc.*, 787 F.3d 1313, 1326 (11th Cir. 2015) ("employee/independent contractor cases are necessarily fact-intensive"). As such, the case required a high level of skill and expertise to litigate the case properly. As set forth in the declaration of Mike Sweeney in support of the motion, Class Counsel has the requisite ability and experience. *See Sweeney Decl.* at ¶¶ 69-72.

Additionally, Class Counsel had to forego other cases in order to litigate this one, as Class Counsel's firm consists solely of seven attorneys and one law graduate with limited time and resources. *Sweeney Decl.* at ¶ 65. Thus, the acceptance of any case by Class Counsel's firm precludes the acceptance of other work. *Sweeney Decl.* at ¶ 66. Class Counsel's customary fee for this type of work one-third of the settlement fund and is contingent on Plaintiffs prevailing, as is evidenced by the Consent to Sue form signed by all Plaintiffs who opted into the case. *Sweeney Decl.* at ¶ 67. The Consent to Sue is Class Counsel's standard form, *Sweeney Decl.* at ¶ 68, and states that Plaintiffs will be represented by Class Counsel "without prepayment of costs or attorneys' fees" and that if Plaintiffs are successful, costs will be deducted from the settlement or judgment and "the fees retained by the attorneys will be either the amount received from the

defendant or 1/3 of my gross settlement or judgment amount, whichever is greater." *See, e.g.*, Doc. 35-1.

As set forth in Section 2.c. above, the settlement is a very good result for Plaintiffs. It provides them with a recovery in line with the risks of litigation and far higher than the average per plaintiff recovery in wage-and-hour actions in recent years. It also provides them with a recovery without having to go through a long trial and appeal process and without bearing the risk of being unsuccessful in the face of Defendants' strong defenses. It also avoids the risk of Defendants' insolvency given Defendants' precarious financial circumstances.

Finally, fees of one-third are typical in FLSA cases and have consistently been approved in this Circuit. *See, e.g.*, *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1382 (N.D. Ga. 2019) (approving requested fees of 1/3 of settlement fund in FLSA case; "Courts within this Circuit have awarded attorney's fees of approximately one-third of a common fund in FLSA and wage and hour cases."); *Pierre-Val v. Buccaneers Ltd. P'ship*, No. 814CV01182CEHEAJ, 2015 WL 12843849, at *2 (M.D. Fla. Dec. 7, 2015) ("Class Counsel's request for thirty-two percent (32%) of the Fund is consistent with the fees awarded by other courts in the Eleventh Circuit."); *Vogenberger v. ATC Fitness Cape Coral, LLC*, No. 2:14-CV-436-FTM-29CM, 2015 WL 1883537, at *4 (M.D. Fla. Apr. 24, 2015) (finding fees of 33% of settlement fund in FLSA case reasonable); *Hosier v. Mattress Firm, Inc.*, Case No. 10–cv–294, 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Atkinson v. Wal–Mart Stores, Inc.*, Case No. 08–cv–691, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-third of maximum common fund apportioned as attorneys' fees).

The Settlement Notice sent to each Plaintiff reminded them that the Consent to Sue that they signed provides that Class Counsel may receive up to one-third of the settlement amount as attorneys' fees, i.e., up to $200,000.00. *See* Doc. 118-2. Again, not a single Plaintiff has objected to or opted out of the settlement. This indicates that Plaintiffs support the award of attorneys' fees of 1/3 of the settlement fund to compensate Class Counsel for the work they did to obtain a significant recovery for Plaintiffs. Because Class Counsel's requested fees are reasonable under the relevant factors, and because Plaintiffs agree with the requested fees, the requested fees should be approved.

### 3.  A Lodestar Cross-check Supports the Reasonableness of Class Counsel's Fees, as the Lodestar is Two Times Higher Than Counsel's Requested Fees

A lodestar cross-check also supports the reasonableness of the fees sought by Class Counsel, as the lodestar far exceeds the fees being requested by Class Counsel. Multiplication of the number of hours reasonably expended on the merits of the litigation by the reasonable hourly rate equals the lodestar, which is generally presumed to be a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). "[T]he Supreme Court has found that the lodestar 'product is presumed to be the reasonable fee to which counsel is entitled.'" *Chacon v. El Milagro Care Ctr., Inc.*, No. 07-22835-CIV, 2010 WL 3023833, at *5 (S.D. Fla. July 29, 2010), *citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986).

Class Counsel spent almost 800 hours litigating this case. *Sweeney Decl.* at ¶¶ 64, 75. The billable time spent litigating this collective action over the course of one year include: investigating the claims; communicating with Named Plaintiff Mosley; drafting and filing the complaint in federal court; researching Defendants' defenses; completing court interrogatories; drafting the joint motion to issue collective action notice to putative opt-ins; issuing collective action notice; tracking and communicating with opt-ins; amending the complaint; communicating with

Defendants' counsel; calculating damages; and preparing for and engaging in mediation and extensive settlement discussions. All of this work, and the time spent doing it, was reasonable and necessary to achieve an excellent result for Plaintiffs. *Sweeney Decl.* at ¶ 64. In addition, Adina Pollan of Pollan Legal, 1301 Riverplace Blvd., Suite 800, Jacksonville, FL serves as local counsel in this matter and has performed 12.2 hours of work in that capacity. *Id.* at ¶ 77. Her regular billing rate for such work is $350.000. *Id.* Her attorneys' fees and costs associated with this matter are $4,270.00. *Id.*

As set forth in Mr. Sweeney's declaration in support of this motion, Class Counsel's extensive experience and excellent results in similar litigation support the rates used by Class Counsel to calculate the lodestar,[8] which are the rates customarily used by Class Counsel. *See Sweeney Decl.* at ¶ 76. As also set forth in Mr. Sweeney's declaration, Class Counsel's rates have been approved by courts all over the country in similar cases. *Id.* at ¶¶ 73-74. While Class Counsel's rates may be somewhat higher than rates for attorneys in the Florida market, the fact that Class Counsel's requested fees are roughly 52% of the lodestar more than counterbalances the difference in rates. *See Su v. Elec. Arts, Inc.*, No. 6:05CV131ORL28JGG, 2006 WL 4792780, at *5 (M.D. Fla. Aug. 29, 2006), *report and recommendation adopted*, No. 6:05CV131OR;28JGG, 2007 WL 2780899 (M.D. Fla. Sept. 20, 2007) (awarding requested attorneys' fees even though Boston counsel's rate of $640 in 2007 appeared excessive because the plaintiffs sought less that the actual fees expended and because the reduction from actual fees to the amount sought properly discounted the excessive rates).

---

[8] The U.S. Supreme Court recognizes that application of current hourly rates, rather than historical rates, is proper. *Missouri v. Jenkins,* 491 U.S. 274, 284 (1989).

Notably, this Court has recognized that, under the *Lynn's Food Stores* standard, it "must consider the reasonableness of any award of attorney's fees, but it is not required to conduct 'an in depth analysis ... unless the unreasonableness [of such award] is apparent from the face of the documents.'" *Chase v. N. Fla. Bldg. Maint., LLC*, No. 3:20-CV-94-J-34JRK, 2020 WL 3848081, at \*3, fn 5 (M.D. Fla. June 17, 2020) (Klindt, J.), *report and recommendation adopted*, No. 3:20-CV-94-J-34JRK, 2020 WL 3833460 (M.D. Fla. July 8, 2020) (alterations in original) (citations omitted). In *Chase*, this Court found it unnecessary to conduct an in-depth analysis of the attorneys' fees sought as part of the parties' settlement, including the hourly rate charged by the plaintiffs' counsel, because the defendant did not contest the reasonableness of the award. *See id.* Because both the number of hours expended by Class Counsel and Class Counsel's rates are reasonable, the lodestar of \$385,692.50 is reasonable. As Class Counsel's requested fees of 1/3 of the settlement fund is only about 52% of the lodestar, such requested fees should be approved.

### 4.   Class Counsel's Requested Costs Are Reasonable

In addition to attorneys' fees, litigation costs are also recoverable. *Lockwood v. CIS Servs., LLC*, No. 3:16-CV-965-J-39PDB, 2019 WL 2226126, at \*22 (M.D. Fla. May 3, 2019), *report and recommendation adopted*, No. 3:16-CV-965-J-39PDB, 2019 WL 3383628 (M.D. Fla. June 13, 2019) (approving reimbursement of costs such as airfare, lodging, postage, delivery and mediation, and rejecting defendants' argument that recoverable costs were limited to those enumerated in 28 U.S.C. § 1920, because "attorney expenses are recoverable under § 216(b) as attorney's fees if they were 'reasonably incurred in the course of case preparation, settlement, or litigation'").

Here, Class Counsel seeks costs of \$3,837.25 for expenses such as filing fees, postage and delivery, travel, and lodging, which were necessary to litigate this case and bring it to a successful resolution via settlement. *Sweeney Decl.* at ¶ 78. These costs are less than those Counsel has

actually incurred and Counsel expects to incur additional expenses in administering the settlement upon final approval. *Id.* at ¶ 79. Because these costs are reasonable, less than actual costs, not opposed by Defendants, and not objected to by Plaintiffs, they should be approved.

## IV.    CONCLUSION

The Court should grant final approval to the parties' settlement as it meets both prongs of the Eleventh Circuit's *Lynn's Food Stores* standard: (1) the settlement involves the resolution of a bona fide dispute over an FLSA provision and (2) the settlement is fair and reasonable. The settlement provides a significant financial recovery for 93 Plaintiffs to resolve their bona fide FLSA dispute with Defendants of whether they were properly classified as independent contractors. Additionally, the requested service award for the Named Plaintiff and Class Counsel's requested fees and costs are reasonable. The 93 Plaintiffs were each issued Notice of the settlement that informed them of their estimated individual recovery, the requested service award for the Named Plaintiff, and Class Counsel's requested attorneys' fees. Not a single Plaintiff objected to or opted out of the settlement. Consequently, the parties respectfully request that the Court:

1) Grant final approval of the Settlement Agreement;

2) Approve a service award of $5,000.00 to the Named Plaintiff for her service to the settlement class;

3) Approve attorneys' fees of $200,000.00, which is 52% of the lodestar, and costs of $3,837.25; and

4) Enter the order attached as Exhibit 3.

Respectfully submitted,

Dated: September 8, 2020            */s/ Michael J.D. Sweeney*            

Michael J.D. Sweeney (PHV)
Lesley Tse (on the brief)
**GETMAN, SWEENEY& DUNN, PLLC**
260 Fair Street
Kingston, New York 12401
Telephone: (845) 255-9370
Fax: (845) 255-8649
msweeney@getmansweeney.com

**Attorneys for Plaintiffs**

Dated: September 8, 2020            */s/ Linda Bond Edwards*            

Linda Bond Edwards
Florida Bar No. 0057282
**RUMBERGER, KIRK & CALDWELL**
Post Office Box 10507
Tallahassee, Florida 32302-2507
Telephone: (850) 222-6550
Telecopier: (850) 222-8783
E-mail: ledwards@rumberger.com

**Attorneys for Defendant**